## Wahr Estate.

Argued March 25, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Thomas N. Griggs,* with him *William S. Marshall* and *Griggs, Moreland, Blair & Douglass,* for certain appellants.

*Robert W. McWhinney,* with him *Harry E. McWhinney,* for certain appellants.

*A. J. Rosenbleet,* with him *Robert E. Woodside,* Attorney General, and *Fisher, Ruddock & Simpson,* for Indiana State Teachers College, appellee.

*Thomas P. Mulvaney* and *Stephen E. Nash* orally argued the case, and with *G. Harold Blaxter, Blaxter, O'Neill & Houston, James H. Beal, Reed, Smith, Shaw & McClay, Robert L. Kirkpatrick, Harry E. McWhinney, Robert W. McWhinney, J. B. McAdoo, R. R. McWhinney, Joseph G. Robinson, Paul C. Harper, Thomas N. Griggs* and *Griggs, Moreland, Blair & Douglass,* filed briefs for various appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, April 22, 1952:

The Pennsylvania Proration Act of July 2, 1937, P. L. 2762, 20 PS 844, provides that the United States estate tax shall be equitably prorated "except in a case where a testator otherwise directs in his will." The single question is whether testatrix has so otherwise directed.

Corinne M. Wahr, the testatrix, by her will bequeathed a piano to a named legatee and $50,000 to a friend. The residue she directed: ". . . *shall be divided into twelve equal shares or parts, and such twelve shares or parts I give and bequeath as follows. . . .*" Testatrix then gives *three* of such shares to a named beneficiary; *three* more to eighteen named individuals; *two* more to three named institutions of learning and

the remaining *four* to a church, four hospitals and an institution for the blind.

The estate was subject to the United States estate tax amounting to $483,132.58 (with possible additional amounts yet due), which was paid *out of the estate* by the executor. The Pennsylvania Transfer Inheritance tax, payable by the *beneficiaries,* was also paid.

In computing the value of the "net estate" taxable under the United States estate tax statute, it is provided that for the purpose of the tax "the value of the net estate shall be determined . . . by deducting from the value of the gross estate . . . (d) The amount of all bequests, legacies, devises, or transfers . . . for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes. . . .": Internal Revenue Code, Act of Feb. 10, 1939, c. 2, 53 Stat. 123, as amended, 26 U.S.C.A. sec. 812.

The Pennsylvania Proration Act of July 2, 1937, supra, provides: "Whenever it appears . . . that an executor, administrator, . . . trustee, or other person acting in a fiduciary capacity, has paid an estate tax, levied or assessed . . . under the provisions of any estate tax law of the United States heretofore or hereafter enacted upon or with respect to any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, *except in a case where a testator otherwise directs in his will, shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred, or to whom any benefit accrues.* Such proration shall be made by the orphans' court in the proportion as near as may be that the value of the property, interest or benefit of each such person bears to the total value of the property, interests and benefits received by all such persons interested in the

estate. . . . For the purposes of this section, the term 'persons interested in the estate' shall . . . include all persons who may be entitled to receive or who have received any property or interest which is required to be included in the gross estate of a decedent, or any benefit whatsoever with respect to any such property or interest, whether under a will or intestacy, or by reason of any transfer, trust, estate, interest, right, power, or relinquishment of power, taxable under any of the aforementioned laws, providing for the levy or assessment of estate taxes." (Italics supplied)

The Proration Act of 1937 has been declared constitutional by this Court: *Harvey Estate*, 350 Pa. 53, 38 A. 2d 262; *Stadtfeld Estate*, 359 Pa. 147, 58 A. 2d 478. Judge KLEIN (now President Judge) of the Philadelphia Orphans' Court, in *Harvey Estate*, supra, in a scholarly opinion, gave the legislative history of the doctrine of equitable proration, which is reported in 47 D. & C. 12. The purpose of the act was to achieve equality of tax contribution and to relieve distributees from inequalities which may result from imposition of the federal *estate* tax: *Jeffery's Estate*, 333 Pa. 15, 3 A. 2d 393; *Mellon Estate*, 347 Pa. 520, 32 A. 2d 749; *Harvey Estate*, supra; *Stadtfeld Estate*, supra.

The statutory mandate is that the tax shall be *equitably prorated*. The ruling of the court below was founded on the equitable ground that gifts which did not contribute to the tax should not share the proration liability. With this we agree. We so decided in *Harvey Estate*, 350 Pa. 53, 38 A. 2d 262, p. 58, where it is said: ". . . in our opinion the application of the equitable doctrine of contribution demands that the tax be borne commensurately by those whose gifts contribute to the tax burden and conversely that there be eliminated from such burden all whose legacies do not in any way create or add to the tax."

Appellants maintain with vigor that testatrix "otherwise directs in her will," when she provides that her residuary estate be divided into *equal* shares and thus precludes tax proration under the act. An equal division of assets, however, does not necessarily mean an equal *tax* burden. For example: if a testator directed that his estate be divided into two equal shares, one of which he bequeathed to a child and the other to a collateral relative, could it be logically contended that the word "equal" also related to transfer inheritance tax? We think not. As none of the gifts to the charities contributed to the federal tax burden, it is just and equitable that such charitable gifts should be relieved from the payment of any part of such tax. Testatrix's use of the word "equal" does not indicate contrary intent.

We agree with the learned court below that parol evidence is inadmissible to explain, construe or contradict the terms of a will, for which principle no citation of authority is necessary.

Decree affirmed at cost of appellants.

———

DISSENTING OPINION BY MR. JUSTICE BELL:

The scrivener of this will omitted to insert a direction or provision for the payment of taxes. It is therefore difficult to determine testatrix's intent with respect thereto.

Precedents are rarely controlling in will cases because each will must be interpreted from its four corners and no will has a twin brother: *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819. Testatrix directed that her residuary estate be divided into *12 equal shares or parts* and gave the first *3 such shares to her cousin,* Sarah M. Jones, and the next 3 such shares to relatives and friends; and the next 6 such shares to charitable or-

ganizations. She obviously wished them, as she specifically said, to share her estate *equally*; certainly after she had named her cousin and other relatives first, no one could seriously contend that she intended to prefer the charities to them*—yet that is the effect of the majority opinion. Testatrix, like every other wealthy American, knew that her taxes would be enormous and there is nothing in her will to indicate that she wanted her relatives (and friends) to pay all these taxes, viz.: $450,000., and to receive *a small fraction* of the 1/12th equal share or other equal share she specifically gave them, while the charities pay (virtually) no taxes and receive their 1/12th share or other equal share in full. I believe she intended that her debts, funeral expenses, taxes and specific and pecuniary legacies should be paid and whatever was left should, as she specifically said, be divided into 12 equal shares or parts and the charities should *receive* 6 *equal* parts or shares and her cousin should *receive* 3 *equal* parts or shares and her other relatives and friends should similarly receive (3) *equal* parts or shares and not, as the majority hold, a fraction thereof.

This equal distribution is eminently fair** and I believe is in exact accord with the testatrix's general

---

* Cf: *Wood's Estate*, 321 Pa. 164, 184 A. 113, in which Mr. Chief Justice KEPHART stated the law as follows: "Where ambiguous . . . expressions appear in a will, the law adheres as closely as possible to the general rule of inheritance and favors the heir or next of kin in preference to strangers. This is a rule of universal application."

** Our cases have applied the equitable principle of equality of distribution in many instances—Cf: *Lewis's Appeal*, 89 Pa. 509; *Lochrie's Estate*, 340 Pa. 145, 16 A. 2d 133; *Laughlin Estate*, 354 Pa. 43, 46 A. 2d 477—on the theory that a testator is presumed, in the absence of expressed intent to the contrary, to intend that his heirs should share his estate equally. This would seem particularly applicable where, as here, testator gave his residuary estate in equal shares to his next of kin and charities.

and specific intent as disclosed by the scheme and the language of her will.

For these reasons, I would hold that testatrix has "otherwise directed in her will" as required by the Act of July 2, 1937, and the taxes should be paid out of the residuary estate before distribution.

Mr. Justice MUSMANNO joins in this dissenting opinion.