# 𝔚𝔭𝔱𝔥𝔢𝔟𝔦𝔩𝔩𝔢

BERTHA T. JOHNSON V. FIRST NATIONAL EXCHANGE BANK OF ROANOKE.

June 14, 1943.

Record No. 2678.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Arnold, Wright, Purpus & Harlor* and *Woods, Chitwood, Coxe, Rogers & Muse*, for the appellant.

*Cocke, Hazlegrove & Shackelford*, for the appellee.

HOLT, J., delivered the opinion of the court.

We are asked to say what is the amount of a certain Federal estate tax, taxed against the estate of the late George P. Johnson, and by whom it shall be paid. It has actually been paid so no Federal question is involved.

George P. Johnson was domiciled in Ohio and died testate there in November, 1940. He named his wife his executrix. The will was duly probated, and she has qualified. There are surviving him, also, a brother, a niece, a nephew and a great-nephew, all of whom are mentioned in the will.

This statement shows the amount of decedent's estate and of what it consists:

Tangible personal property..................$ 505.00
Currency in the safety deposit box at First National Exchange Bank of Roanoke........ 100.00
Securities at appraised value (Schedule C of Exhibit C, appraised at $317,308.59, less 250 shares Appalachian Electric Power 7% preferred stock, appraised at $28,187.50 redeemed as hereinabove set out at $27,592.50 and proceeds deposited in the testator's account First National Exchange Bank of Roanoke) ............................... 289,121.09

Money on deposit First National Exchange Bank
  Roanoke, Virginia ($26,086.54 as shown on
  Schedule D, Exhibit C, plus $27,592.50 pro-
  ceeds from Appalachian Stock)........... 53,679.04
Money on deposit Security Central National
  Bank, Portsmouth, Ohio (Schedule D, Ex-
  hibit C) ................................ 10,000.00
Money on deposit Huntington National Bank,
  Columbus, Ohio (Schedule D, Exhibit C).. 10,000.00
American Express Company travel checks
  (Schedule D, Exhibit C)................... 22,780.00

     Total gross estate...................$386,185.13

By transfer and delivery to
  Bertha T. Johnson, legatee
    tangible personal property.$     505.00
  Lucius C. Johnson, legatee...    2,500.00
  Ruth J. Davock, legatee.....    2,500.00
  George P. Johnson, legatee...    2,000.00
  Bertha T. Johnson, "allowance
    for year's support"........   25,000.00     32,505.00

Residuary Estate ...........................$353,680.13

To Bertha T. Johnson, one-third of Residuary
  Estate ............................... 117,893.38

Remaining two-thirds Residuary Estate........$235,786.75

To payment from remaining two-thirds of Resid-
  uary Estate of debts, demands and obliga-
  tion against the estate (estimated)........ 88,132.93

To balance to First National Exchange Bank of
  Roanoke, Trustee .....................$147,653.82

    Decedent also carried for the benefit of his wife four
life insurance policies, whose face value was $41,781.00.

After payment of taxes, specific bequests, etc., one-third of the estate remaining was given to the wife and two-thirds to the First National Exchange Bank, Roanoke, Virginia, named as testamentary trustee, under which arrangement the wife took $117,893.38 and the bank took $235,786.75. From this are to be met debts, etc., in amount $88,132.93, leaving the estimated net balance to the trustee of $147,653.82. The income from this trust estate is payable to Mrs. Johnson. At her death it is to be divided among certain designated residuary legatees.

In appellants' petition for appeal are these statements:

"Mr. Johnson carried four life insurance policies in which his wife was named as primary beneficiary. The total face amount of these policies was $41,781.00. While these policies were issued in said aggregate face amount, yet this amount was not the value of the proceeds of the policies for Federal estate tax purposes, because of the manner in which the proceeds under two of the policies were payable. Under these two policies it was provided that if the insurer's wife should survive him she should be paid certain stipulated amounts each month during her lifetime. If she should die within five years following his death, then, in the case of one policy, the commuted value of the remaining unpaid monthly installments for said five year period should be paid to her estate and, in the case of the other, the remaining unpaid installment (for the five-year period) should be paid to the insured's brother, if living, otherwise to his wife. Since the insured's widow survived him, the companies were required to set up reserves sufficient to assure the payment of the monthly installments during her lifetime. On the basis of her life expectancy these reserves were quite substantial, aggregating $93,172.73 instead of $18,292.73, the amount of the reserves for payments over a period of five years. This, therefore, increased the total amount of insurance proceeds to $101,874.49 for the purposes of Federal estate tax, subject, however, to the exemption of $40,000.00. Hence the amount of insurance proceeds taxed as a part of the gross estate was $61,874.49."

It is the Federal tax on the item of $61,874.49 which is in dispute. Against whom must it be charged?

At the time of the filing of the bill of complaint, the Federal estate tax was thought to be $52,521.40, but upon a final audit of the estate by representatives of the Federal Internal Revenue Department, this total estate tax appears to be $54,769.66, reached in this wise:

Basic tax 1926 Act:

| | |
|---|---|
| Gross estate (including $61,874.49 taxable insurance to Bertha T. Johnson) .................. | $438,795.00 |
| Deductions on account of debts, commissions, etc. ........... | 50,755.69 |
| Balance ...................... | $388,039.31 |
| Specific exemption ............. | 100,000.00 |
| Net taxable estate.............. | $288,039.31 |
| Basic tax ..................... | $ 8,021.57 |
| Less 80% credit............... | 6,417.26 |
| Net basic tax............................... | $ 1,604.31 |

Additional tax 1932 Act:

| | | |
|---|---|---|
| Gross estate less deductions (see above) ................... | $388,039.31 | |
| Specific exemption ............. | 40,000.00 | |
| Net taxable estate.............. | $348,039.31 | 48,186.29 |
| Total net basic and additional taxes............ | | $ 49,790.60 |
| Defense tax (10% of the above).............. | | 4,979.06 |
| Total Estate Tax........................... | | $ 54,769.66 |

Included in this final audit is the item $61,874.49. In dispute here is against whom the tax on it shall be charged. All of the estate tax, including that on it, $54,769.66, has been paid. Its proportionate amount is shown by this statement:

$$\frac{61,874.49}{288,039.31} \times 1,604.31 \ldots\ldots\ldots\$\ 344.63$$

$$\frac{61,874.49}{348,039.31} \times 48,186.29 \ldots\ldots\ldots\ 8,566.56$$

Total ....................... $8,911.19

Defense Tax (10% above)..... 891.12

$9,802.31

These insurance policies were not a part of decedent's estate, but the item of $61,874.49 is taxable under these provisions:

"Section 314(b) of the 1926 Act and section 826(c) of the 1932 Act provide:

" 'If any part of the gross estate consists of proceeds of policies of insurance upon the life of the decedent receivable by. a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds, in excess of $40,000.00 of such policies bear to the net estate.'

"Treasury Regulation 105 provides:

" 'The executor is entitled to require beneficiaries under insurance policies to bear their proportion of the tax. These provisions, however, are not designed to curtail the right of the Commissioner to collect the tax from any person, or out of any property, liable therefor.' "

It thus appears that the commissioner, if he sees fit, may recover this tax directly from the insurance beneficiary.

Section 1 of the testator's will describes in detail what taxes shall be paid by his estate. It reads:

"I direct that all of my debts, funeral and testamentary charges and expenses shall be paid by my executrix as soon after my death as may be conveniently done.

"I also direct that all estate, inheritance, succession or transfer taxes, or any other taxes in the nature of any thereof, which may be levied or payable upon any of the legacies, devises, life estates or remainders hereinafter set forth, or the property composing the same, or the shares, interests or estates of any of the beneficiaries hereunder, or on any gifts, transfers, conveyances or trusts heretofore or hereafter made or created, shall be paid out of the principal of that part of my 'residuary estate', hereinafter bequeathed and devised in Item 2 of subsection B of Section III hereof, or out of the principal of my 'residuary estate' hereinafter bequeathed and devised in subsection C of Section IV hereof."

Subsection B also makes provision for the payment of taxes. It reads:

"All of the rest and remainder of my estate, both real and personal, of whatever nature and wheresoever situate, of which I shall die seised and possessed, or to which I shall be in any way entitled at the time of my death, including lapsed legacies, herein sometimes referred to as 'residuary estate', I give, devise and bequeath as follows, to-wit:

"Item 1. One-third thereof, that is, one-third of my entire residuary estate prior to the payment of all debts, taxes, (including any and all estate, inheritance, successive or transfer taxes or any other taxes in the nature of any thereof), expenses and costs of administration, to my said wife, Bertha T. Johnson; however, should this one-third of my residuary estate be less than the sum of $50,000.00, then I give and bequeath unto my said wife from the residuary estate the sum of Fifty Thousand Dollars ($50,000.00)."

The widow has received or is entitled to receive in full one-third of the entire gross residuary estate of the testator, in no wise diminished by the payment of any debts, costs or

expenses of administration or payment of taxes on the decedent's estate, all of which have been paid from the trust estate. In addition she has received, under the doctrine of survivorship, all of the testator's real estate, $2,500.00 as "property exempt from administration" and $25,000.00 allowed her by the Ohio appraisers as a widow's "allowance for year's support." In addition to all of this she has received or is entitled to receive directly from the insurance companies the proceeds of life insurance amounting to $101,874.49.

Taxes to be paid by the estate are taxes upon legacies, devises, life estates, or remainders hereinafter set forth, or the property composing the same, or the shares, interests, or estates of any of the beneficiaries hereunder, or on any gifts, transfers, conveyances, etc., or any other taxes in the nature of any thereof.

These insurance policies are not legacies, devises, life estates or remainders and in no wise in the nature thereof. They were not a trust, and the fact that they were paid under a form which increases them from $41,781.00 to $101,874.49 does not make them a trust and provisions in them to the effect that should she survive her husband she should be paid not a gross sum but a stipulated amount for each month has in it none of the elements of a trust. From this it follows that taxes paid upon $61,874.49 must be paid by the beneficiary and not out of the trust fund amounting by stipulation now to $9,802.31, if the principle adopted by the trial court be followed. This is in fact less than it appears to be, for the trust fund is not thereby depleted, and in it the widow has a life estate.

It is true that they are taxed along with the testator's estate, but not as a part of it. This tax, as we have seen, may be collected directly from the insurance beneficiary.

It is further contended that if this will be construed as it was construed by the lower court, applying the principles laid down in *United States Trust Co. v. Sears*, 29 F. Supp. 643, the result would be:

"$ 61,874.49 (insurance)

$$\frac{61,874.49 \text{ (insurance)}}{388,039.31 \text{ (net earned)}} \times \$54,769.58 \text{ (total tax)} . \$8,733.25"$$

What the lower court did hold was that Mrs. Johnson's proportionate part of the tax for which the trust estate should be reimbursed amounted to $9,741.90, later increased by a final audit to $9,802.31, making a difference of $1,069.06. This difference turns upon the proper definition of "net estate." That is to say, the lower court could not only allow deductions for debts, costs of administration, etc., but also the $100,000 under the 1926 Act and the $40,000 under the 1932 Act, which was not allowed in the *Sears Case*.

In an article in 54 Harvard Law Review, p. 27, is this statement:

"The Regulations provide: 'The term "net estate" has a distinct meaning in the statute, signifying the difference between the total value of gross estate and the total of the authorized deductions. One of the deductions authorized in the case of the estate of a resident of the United States is a specific exemption.'

"In view of the above regulations, if we call A the proceeds of the insurance policies, B the net estate for tax under the 1926 Act, C the net 1926 tax, D the estate for tax under the 1932 Act (as amended), and E the 1932 Act (as amended) tax, the insurance beneficiary will be assessed to the extent of (A/B times C) plus (A/D times E). This results in a denial to the insurance beneficiaries of a proportionate share of the specific exemption of $100,000 under the 1926 Act and $40,000 under the 1932 Act (as amended). But until Congress or the courts clarify the meaning of 'net estate' in this statute, the executor would seem to have no recourse other than to follow the definition of the term contained in the regulations."

That article further goes on to say that in the *Sears Case* "The statutory definition of 'net estate' was held not to apply since its application would distort the burden. It

would seem advisable not to rely upon this decision, but to follow the method of apportionment worked out above until a higher court has decided otherwise, since the reasoning of the court in attempting to get away from the statutory definition is not very compelling and it would seem that the remedy was with Congress and not the courts."

This is a case of first impression in Virginia. It has been ably argued. After careful consideration, we are of opinion that the statutory definition of net estate should be followed and that the decree of the lower court should be affirmed, subject to the final audit of the taxing authorities, and that the trust estate should be reimbursed in the sum of $9,802.31. With this modification, it is affirmed.

*Modified and affirmed.*