## Leeds v. Montgomery County

*Smillie, Bean & Scirica*, for plaintiff.
*Alexander Knight*, for defendant.

FORREST, J., November 30, 1954.—This is an action against the County of Montgomery brought by one of its residents for the recovery of certain alleged overpayments of county personal property taxes for the years 1948, 1949 and 1950. The county has filed preliminary objections and has assigned as reasons therefor, first, that the allegations of the complaint do not set forth a cause of action and, second, that since the action was not commenced within the three-year period prescribed in section 3 of the Act of May 21, 1943, 72 PS §5566d, plaintiff is barred from recovering.

The matter being before us on preliminary objections, all of the allegations of the complaint which have been properly pleaded are deemed admitted. They may be summarized as follows: That plaintiff is the life beneficiary of certain trusts administered by the Chase National Bank in New York City,* that plain-

---

* The Act of June 17, 1913, P. L. 507, sec. 1, as last amended by the Act of June 28, 1947, P. L. 1008, sec. 1, 72 PS 4821, provides, inter alia, that:

". . . the equitable interest in any such personal property of the classes hereinafter enumerated, owned, held or possessed by any resident, where the legal title to such personal property is

tiff filed personal property tax returns with defendant for the years 1948, 1949 and 1950; that she made overpayments of such taxes for each of those years (however, there is no definite explanation of her so doing, which, as we conclude hereinafter is determinative) that in 1954 plaintiff learned that her tax returns had been erroneously prepared and that, as a result thereof, the taxes had been overpaid. The county has declined to make refunds of the overpayments for reasons stated in the preliminary objections.

Before the approval of the Act of May 8, 1929, P. L. 1656, county commissioners had no authority to make refunds of taxes erroneously or inadvertently paid into a county treasury "under an assumption that such taxes were due and owing, when in fact such taxes or a part thereof were not due and owing to the county."

In Shenango Furnace Company v. Fairfield Township, 229 Pa. 357 (1911), the court indicated at page 374 that the taxpayer might be entitled to a refund in a court of equity if "payment was made in ignorance or mistake of any material fact". The court stated at page 375:

"If, however, the taxes were paid by reason of . . . negligence or inadvertence, it is no ground for relief . . . *Mistake* as a *basis for refunding taxes is a misapprehension* or misunderstanding *arising from ignorance*, an essential prerequisite, and is *distinguished from that inattention* or absence of thought which are *inherent in negligence*, and is not such as results from inadvertance or negligence: 2 Pomeroy's Eq. Jur. (2d ed.), sec. 839." (Italics supplied.)

vested in a trustee . . . domiciled in another state . . . and where such resident is entitled to receive all or any part of the income therefrom . . . is hereby made taxable annually for county purposes, . . ."

However, Arrot v. Allegheny County, 328 Pa. 293, 295 (1937), states that:

"Prior to the passage of the Act of 1929, supra, county commissioners were powerless to grant refunds of taxes erroneously but voluntarily paid, without protest, even in the most meritorious cases; nor was there any jurisdiction in the courts to grant such relief . . .".

"This statute is in derogation of the common law and must be strictly construed [citing cases]."

The common-law rule was altered by the Act of 1929 which *authorized*, but did not require, county commissioners to make refunds under such circumstances. However, no right to sue in assumpsit was conferred upon taxpayers. See Arrott v. Allegheny County, supra.

In Wilson et ux. v. Philadelphia School District, 328 Pa. 225, 243 (1937), quoted in Phipps et al. v. Kirk, Treasurer, 333 Pa. 478, 483 (1939), it is said:

"This court has uniformly adhered to the well-established rule that 'money voluntarily paid on a claim of right, *when* there has been *no mistake of fact*, *cannot be recovered* back on the ground that the party supposed he was bound in law to pay it when in truth he was not' [citing cases]."

In Philadelphia & Reading C. & I. Co. v. Tamaqua Borough School District, 304 Pa. 489, 494, the same principle is enunciated:

"Undoubtedly, the well established rule in this State is that a voluntary payment of taxes to the public authorities, without any duress, threats, or misstatements on the part of the latter, or protest and notice of intention to reclaim on the part of the taxpayer, precludes subsequent recovery of any overpayment: [citing cases]. If the payment was a voluntary one, it may not be recovered unless a statute so provides: [citing cases]."

See also specific statement in Hotel Casey Company v. Ross et al., 343 Pa. 573, 575 (1942), that "In the absence of any refunding statute, the common law rule in this state is that taxes paid voluntarily and without protest cannot be recovered [citing cases]."

In this state of the law, the Act of May 21, 1943, P. L. 349, was enacted. Section 1, 72 PS §5566(*b*), provides, inter alia, that:

"Whenever any person or corporation of this Commonwealth has erroneously or inadvertently paid . . . into the treasury of any political subdivision, . . . any tax or taxes on . . . personal property . . . *under an assumption* that *such taxes . . . were due and owing when in fact such taxes . . .* or a part thereof, *were not due and owing* to the political subdivision, then in such cases the authorities of the political subdivision, upon due proof, of any such erroneous or inadvertent tax . . . payments, are hereby directed . . . to make refund out of the public funds of such tax or taxes . . . to which the political subdivision has no valid claim: . . ."

In this case, as in all cases, "When the words of the law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters . . . (5) The former law, if any, including other laws upon the same or similar subjects; . . ." Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551.

In order that a recovery be warranted under the Act of 1943, supra, the Supreme Court has said that: ". . . it is implicit that a payment of taxes to be made erroneously or inadvertently must be made 'under (a) mistaken assumption as to the facts.' The language of the Supreme Court of South Dakota in Security National Bank v. Twinde, 52 S. D. 352, 217 N. W. 542, 544, in construing the term 'erroneously paid' as a prerequisite to a tax-recovery under a statute of that

State, is so apposite presently as to justify the following quotation therefrom: 'We think the word "erroneously," as used in subdivision 5 of section 6813, must be taken in its ordinary sense of "mistakenly". There was no error or mistake in the payment made by the plaintiff. It paid the very tax and the amount of tax that it intended to pay; nor was there any error in noting the payment or in issuing the receipt. In our view, the words "erroneously paid" were clearly intended to cover cases where payment was made under a misapprehension as to what was being paid. But a tax intentionally and understandingly paid, although the assessment was made or the tax levied incorrectly, is not erroneously paid, and we do not think that section 6813 was designed to allow a refund of taxes in such a situation.' See, also, Shea v. State Tax Commission, 101 Utah 209, 120 P. 2d 274, 275, which cites and accords with Security National Bank v. Twinde, supra. In Estate of Brown, 196 Cal. 114, 236 P. 144, 147, and in Kelshaw v. Superior Court, etc., 137 Cal. App. 189, 30 P. 2d 432, 433, in treating with a statute of California providing for refunding of inheritance taxes 'when any amount of said tax shall have been erroneously paid', it was respectively held that the statutory provision has no applicability to the payment of an improper assessment or to a case where there has been a payment of the exact amount specified by the assessment." Pittsburgh Coal Company v. Forward Township School District, 366 Pa. 489, 492 (1951).

In the case cited, the taxpayer had made no mistake of fact but had paid taxes imposed under an invalid taxing resolution. Nor was there any mistaken assumption as to the facts in Columbia Casualty Company v. Westmoreland County, 365 Pa. 271, 274 (1950), cited in the Pittsburgh Coal Co. case, supra.

The court in Consolidated Dressed Beef Company v. City of Philadelphia, 79 D. & C. 113, 116-17 (1951)

states that in the Pittsburgh Coal Company case, supra:

"The court followed the reasoning of a South Dakota case, a Utah case and California cases, which held in effect that if taxes are intentionally and purposely paid, there was no room for considering them to have been either 'erroneously or inadvertently' paid so as to permit refunds on that basis under similar statutes. As we understand it, what was decided by those cases now followed by our Supreme Court was that if a taxpayer intended to make payment, which he in fact made, particularly in the exact amount specified by the assessment or bill, he could not thereafter contend that he had made the payment 'erroneously or inadvertently.' In other words, the fact of the alleged erroneous or inadvertent payment had to be with reference to the payment itself."

Since there was a mistake of law, not of fact, in the Pittsburgh Coal Co. case, it seems that the decision might have been based upon that ground alone and that it was unnecessary to refer to decisions in other jurisdictions. Albeit, in the present case, the complaint is unclear as to the facts which led to the alleged overpayment. Consequently, it is impossible at this time to determine whether or not plaintiff has a right of action under the Act of 1943 as construed by the Pittsburgh Coal Company case. Plaintiff should be given an opportunity to clarify her claim.

Defendant's second reason for preliminarily objecting is that section 3 of the Act of May 21, 1943, 72 PS §5566(d), is a three-year statute of limitations which bars recovery for taxes for 1948, 1949 and 1950 in any event, the complaint having been filed on July 20, 1954. This section is as follows:

"The provisions of this act shall be retroactive and effective as to any and all taxes and fees heretofore

erroneously or inadvertently paid into the treasury of any political subdivision for a period of not exceeding three years prior to the discovery of such erroneously paid taxes and fees."

This quite puzzling section has been the subject of some judicial construction. See Longacre Park Heating Co. v. Delaware County et al., 160 Pa. Superior Court 252 (1947). Is the three-year period prescribed by the act a general period of limitation or does it have reference only to the retroactivity of the act? In Consolidated Dressed Beef Co. v. City of Philadelphia, supra, there is dictum in support of the former proposition. To the contrary, Allegheny Trust Company v. County of Allegheny, 97 Pitts. 6, 8 (1948) holds that the ordinary six-year statute of limitations applies.

"The defendant's demurrer denies the legality of the plaintiff's claim because the 'Act of Assembly, supra, limits refunds to a period of not exceeding three years prior to the discovery of such erroneously paid taxes.' The word in the Act of Assembly itself is not 'prior,' but 'heretofore: If this were to have been the intention, one must wonder why the Legislature used all the other language in the Act, why did it not plainly indicate that any and all the provisions of this Act were to be exclusively retroactive, and then limit it at most to a period never exceeding three years prior to discovery of the mistaken payment. The Legislature did not draw the Act in that fashion."

In our judgment, section 3 of the Act of 1943 was not intended to supersede the six-year statute of limitations applicable to actions in assumpsit.

## Order

And now, November 30, 1954, defendant's first preliminary objection is considered as a motion for a more specific complaint and is sustained. Defendant's second

preliminary objection is overruled. It is ordered and decreed that plaintiff, within 20 days after the date hereof, file an amended complaint which shall be more specific, in conformity with the foregoing opinion.